**Claudia ASHTON, et al., Plaintiffs,**

v.

**Samuel PIERCE, et al., Defendants.**

**Civ. A. No. 81–719.**

United States District Court, District of Columbia.

Feb. 3, 1984.

---

Charles S. Fax, Cheryl C. Burke, Lynda Troutman O'Sullivan, Tara Harvey, Washington, D.C., for plaintiffs.

Surell Brady, June Rose Carbone, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

On November 28, 1983, this Court ruled that the Secretary's defense of his failure to take steps required by Congress addressing the hazards of "tight" paint was not "substantially justified" within the meaning of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), and that plaintiffs were therefore entitled to recover attorney's fees and expenses under the EAJA. Plaintiffs have now applied for $170,027.87 in attorney's fees and $5,381.55 for costs and expenses claimed in connection with the pursuit of this case in both the District Court and the Court of Appeals. 716 F.2d 56 (D.C.Cir.1983). The Court must determine the amount of fees and expenses to be awarded. The issues have been fully briefed and argued.[1]

The Court has no quarrel with the quality of the legal work performed by plaintiffs' counsel. The briefs and arguments presented in the District Court were useful to resolution of the case and generally of high quality. Plaintiffs prevailed on the central issue in the case, although certain lesser issues were lost and other issues more properly the concern of local courts were severed. The result obtained by the lawsuit benefited the public interest. In considering an application for attorney's fees, however, recognition of these favorable factors does not end the Court's inquiry. A fee applicant still has the burden of satisfying the Court that the fees claimed were in fact reasonable. *Hensley v. Eckerhart,* — U.S. ——, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Where, as

---

1. Plaintiffs have also filed a Motion to Retax Costs, to which the government has not specifically responded.

here, the maximum hourly rate is controlled by statute, absent special circumstances the reasonableness of the fee claimed primarily hinges on whether or not the attorney time logged and claimed was necessary and was effectively used.

The principal work in the present case was controlled by two partners and two associates working somewhat interchangeably. In all, however, eleven attorneys, fourteen law clerks and nine paralegals were involved in preparing and presenting plaintiffs' case. The time expended by these individuals was recorded by a computerized recordkeeping system, and the computer printouts generated by this system have been submitted to the Court to document the time expended. Descriptions of the work performed are cryptic and not particularly informative. The fee application contains no detailed breakdown of time expended by subject matter, and no detailed attempt has been made to justify the necessity of the work performed.

The application does indicate that a fee of $54,114.56 is claimed for the appeal, covering 660 hours of attorney time and 260 hours of law clerk time, discounted by 15 percent. It also appears that something well over $13,000 is claimed for preparing and presenting the fee request itself.[2] The remaining amount claimed is for the proceedings in the District Court on the merits of the case. Attorneys logged a total of 3,622 hours and paralegals and law clerks accounted for 1,221 hours on this aspect of the case. These charges have been reduced for purposes of the fee application to 1,766 hours and 653 hours, respectively, as a result of "billing judgments" not fully explained in the supporting affidavits.

▆ Granting that counsel were thorough and careful in preparing their case, it is still impossible to avoid the insistent impression of duplication, expenditure of time on unreasonable and unproductive research, and reliance on inexperienced assistants. This case involved a relatively straightforward question of statutory interpretation which was resolved on cross-motions for summary judgment after only limited discovery. The cross-appeals taken from this Court's judgment addressed the same issues already briefed and argued below. The Court has undertaken an exhaustive review of the material presented in an effort to sort out precisely where and to what extent excesses and waste occurred. However, the limited descriptions of work done generated by the impersonal discipline of the computer, and plaintiffs' failure to elaborate fully on the purposes of the particular charges incurred, have made this review unrewarding. It is clear to the Court, nevertheless, that the total number of hours claimed is still unreasonable and must be drastically scaled down.[3]

Examining the briefs and partial transcript of argument in the Court of Appeals, the only aspect of the litigation for which the hours expended can be clearly segregated and related to the work required, the claim appears to be at least twice what would constitute a reasonable fee. As to work performed in connection with District Court proceedings, a breakdown by issues or portions of the case cannot be clearly determined, but it is again clear that what was an essentially straightforward lawsuit has been allotted a disproportionate amount of time as a result of either excessive zeal or inexperience. Overstaffing and excessive use of attorney time should not be at government expense. In the Court's experience motions of this type should be efficiently and competently presented with far less expenditure of legal time.

---

**2.** "[A]lthough a successful litigant is ordinarily entitled to fees for its litigation of a fee application, [it] cannot receive compensation for work that could have been avoided." *Action on Smoking and Health v. Civil Aeronautics Board,* 724 F.2d 211 at 224 (D.C.Cir.1984) [footnotes omitted].

**3.** "[W]here duplication of effort is found by the court to be not small, the court is not limited to making a small percentage reduction. Parties seeking the assurance that clear representational overkill can provide must bear themselves the cost that it occasions." *Tasby v. Estes,* 651 F.2d 287, 289–90 n. 1 (5th Cir.1981).

After weighing the favorable considerations mentioned, as well as the serious deficiencies noted, the Court has little choice but to award reasonable attorney's fees by exercising its informed discretion based on all the circumstances of the case. *Hensley,* 103 S.Ct. at 1941. In the Court's best judgment a reasonable fee for work on matters before the District Court is $48,-500; for work in the Court of Appeals a fee of $24,000 is appropriate. These amounts shall be awarded in addition to other costs and expenses as discussed below.

■ It is not clear from the language of the EAJA whether paralegal and law clerk charges can be recovered. Section 2412(d)(1)(A) provides for award of "fees and other expenses," which includes

> reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorneys fees . . . .

28 U.S.C. § 2412(d)(2)(A). While this statutory language clearly evinces an intent to take a narrow approach to allowable expenses, it provides little guidance on this issue. In *Jordan v. United States Department of Justice,* 691 F.2d 514 (D.C.Cir. 1982), the Court took an expansive view of the term "attorney's fees," holding that this rubric was broad enough to include compensation for work performed by law students. 691 F.2d at 522–23. *Jordan,* however, was a case under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the legislative history of the EAJA suggests that in this Act Congress intended to take a more restrictive approach to award of the expenses of litigation. In particular, beyond costs possibly recovered as a component of the hourly fee awarded

for attorney time the EAJA is not intended to reimburse attorneys for overhead expenses.

> The ceiling on attorney fees relates only to the compensation of lawyers or agents (e.g., accountants themselves). *It does not include their overhead expenses* or other costs connected with their representation of a particular interest in a proceeding. [Emphasis added.]

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980), U.S.Code Cong. & Admin.News pp. 4953, 4994.

To award "fees" for law clerk and paralegal time at hourly charges billed to clients would, in effect, be to compensate those firms both for overhead and profit.[4] If compensation for the work of law clerks and paralegals was denied entirely, on the other hand, this also might frustrate the purposes of the EAJA by "forc[ing] attorneys to handle the entire case themselves, achieving the same results but at a much higher cost." *Berman v. Schweiker,* 531 F.Supp. 1149, 1154–55 (N.D.Ill.1982), *aff'd,* 713 F.2d 1290 (7th Cir.1983). Consequently, the Court has concluded that the appropriate means of compensation for law clerk and paralegal time is to treat this class of personnel as an expense covering "study" and "analysis" within the meaning of the statute. Thus they should be reimbursed at actual salary cost for time expended.[5]

Plaintiffs' attorneys compensated their paralegals and law clerks at rates of approximately $9 per hour and $11 per hour, respectively. The Court accordingly awards plaintiffs $4,000 for the expenses of law clerk and paralegal services on this case.

Plaintiffs also seek $5,381.55 in other expenses. This amount includes postage, photocopying, transportation, Lexis re-

---

**4.** Given Congress' admonition against payment for overhead, it is difficult to reconcile charging, for an estimated 1800 hours per year, "fees" of $81,000 ($45 per hour) for an assistant receiving a salary of $16,200 ($9 per hour).

**5.** Some courts have suggested that paralegals and law clerks should be treated differently. *See Glick v. United States Civil Service Commis-*

*sion,* 567 F.Supp. 1483, 1486 n. 5 (N.D.Ill.1983). This Court has been able to discern no justifiable basis for such a distinction, however. Unlike admission to the bar, mere enrollment in law school represents no specific level of skill in legal matters. Both law student clerks and paralegals may vary widely in terms of legal training, experience and ability.

search charges, and other items. Most of these expenses are not recoverable under the EAJA. *See Action on Smoking and Health, supra,* at 223.

The only additional costs that may be recovered are those costs normally awarded by the Clerk to a party who obtains a judgment in this Court. *See* 28 U.S.C. § 2412(a); 28 U.S.C. § 1920. Costs in the Court of Appeals have already been awarded by the Clerk of that Court. In the District Court plaintiffs have been awarded $100 in costs by the Clerk and have by motion asked this Court to increase the amount awarded to $506.86. In accordance with *Action on Smoking and Health, supra,* the Court disallows the claim for postage and grants plaintiffs' motion with respect to its claim for photocopying. The Clerk shall be directed to award plaintiffs costs totalling $464.02.

In light of the enormous fee claim this case has engendered, and the extensive effort to increase the claim by asking for further fees due to work done to perfect the original fee claim, a postscript is appropriate. The United States District Court for the District of Columbia processes a large number of Freedom of Information Act, discrimination, and other cases where fees may be awarded under statutes, including cases to which the Equal Access to Justice Act applies. As a result its work load has been significantly increased in recent years by contested applications for attorney's fees. Often these fee requests consume more court time and involve more paper work than the underlying case. Unable to settle the question of fees outside the court, lawyers make excessive claims and then must defend their work against charges of waste, overstaffing, ineffectiveness, and lack of competence. The Court is too often called upon to determine such

questions as whether taxi or subway was the proper mode of transportation for particular errands,[6] or whether certain research was necessary or a specific office or client conference should have taken place. These squabbles may be as degrading for the lawyers involved as they are distasteful for the courts which must resolve them.

It is now accepted that lawyers who prevail in these cases may be entitled to be paid a reasonable fee for services which are still somewhat euphemistically referred to as *"pro bono."* Attorneys hope to receive and usually request massive fees which cover their time, overhead, out-of-pocket expenses and a handsome profit. Often the government is asked to pay for the "learning experiences" of coveys of junior associates and other assistants assigned to a case to break the tedium of everyday practice. The concept of merely making lawyers whole has long since gone out the window. As yet, courts have had little success in fashioning tools for dealing with this burgeoning phenomenon.

The EAJA program is experimental; by its own terms it will lapse in October of this year if not renewed by Congress.[7] Necessarily it is a compromise. Lawyers who treat the EAJA as designed to compensate counsel in the same generous manner as some lawyers are compensated in private practice should take heed of the consequences. In passing this statute Congress clearly indicated that it did not intend to place such a heavy burden on the public purse. Failure to reach prompt and reasonable fee dispositions by settlement or efficient use of court proceedings may eventually jeopardize the golden goose. Congress, for its part, would do well to consider how the fee-setting process may be streamlined, perhaps through use of ar-

---

**6.** At least in this Circuit for suits brought under the EAJA, however, this particular issue has been resolved. *See Action on Smoking and Health, supra,* at 223 (holding taxi fares and presumably other transportation expenses uncompensable).

**7.** The expiration provision applies only to § 2412(d), which provides for attorney's fees

where the government's position was not "substantially justified"; this provision governs attorney fees in the present case. Section 2412(b), which allows attorney fees against the United States "to the same extent that any other party would be liable" is not subject to expiration. *See* Pub.L. No. 96–481, § 204(c), 94 Stat. 2329 (1980).

bitration or promulgation of more definitive and simplified standards for passing on such fee requests.

An appropriate Order awarding fees, expenses and costs to plaintiffs in the present suit is filed herewith.