**Orville TAYLOR**

v.

**UNITED STATES of America.**

**C.A. No. 82–2512.**

United States District Court,
E.D. Pennsylvania.

Feb. 21, 1984.

---

1. Duquesne (C.A. No. 81–870) and Associated (C.A. Nos. 83–2060 and 83–2626).

Stanley Shingles, Philadelphia, Pa., for plaintiff.

Dawn MacPhee, Commander Donal Hill, Office, Adv. Gen. U.S. Navy, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Presently before the court is an application of the plaintiff for attorney's fees and expenses pursuant to the provisions of 28 U.S.C. § 2412(d). The underlying action was brought by the plaintiff on June 9, 1982 alleging an unconstitutional detention and seeking to enjoin the United States Navy from returning him to Spain under military orders.

The plaintiff had been stationed at a naval base in Spain when he was involved in an off-duty accident. He was charged by Spanish authorities with involuntary manslaughter, tried by a Spanish court and convicted. The plaintiff's enlistment expired after his conviction by a Spanish

Court, but while he was awaiting appellate review. The Navy involuntarily extended plaintiff's enlistment and refused to discharge him. After plaintiff's conviction was affirmed by the Spanish appellate court, plaintiff fled Spain. The Navy then listed plaintiff as a deserter. Approximately one year later, plaintiff was stopped for a traffic violation in Richmond, Virginia, at which time he was turned over by the police to naval authorities, after a routine check showed him to be a Navy deserter. The Navy transferred plaintiff to a Navy brig in Philadelphia to await transfer to Spain and surrender to Spanish authorities.

Action was then commenced in this court. On July 15, 1982, this court permanently enjoined the Navy from transferring the plaintiff to Spain, and ordered that the plaintiff be released from naval custody. On June 21, 1983 the Court of Appeals for the Third Circuit affirmed this court's judgment. 711 F.2d 1199. The government's petition for rehearing was denied by the Court of Appeals on July 21, 1983. On August 25, 1983, the plaintiff filed an application for attorney's fees.

For the reasons which follow, the application of the plaintiff for fees and expenses is denied.

The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) provides that:

..., a court shall award to a prevailing party ... fees and other expenses, ..., incurred by that party in any civil action, ..., brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

§ 2412(d)(1)(B) provides that:

A party seeking an award of fees and other expenses shall, within 30 days of final judgment in the action, submit to the court an application for fees and other expenses....

The thirty day time limitation for applying for attorney's fees contained in EAJA is not a statute of limitations, it is a juris-

dictional prerequisite to governmental liability, and without it, this court is without jurisdiction to award fees.[1]

The plaintiff's application for fees was filed on August 25, 1983, which was over a year after this court's judgment on July 15, 1982; it was sixty-five days after the June 21, 1983 affirmance of the judgment by the Court of Appeals; and it was thirty-five days after the Court of Appeals denied the request for a rehearing en banc.

Nowhere in the EAJA is the phrase "final judgment" defined. However, several courts have addressed the issue of what constitutes a "final judgment," for purposes of the thirty day requirement set forth in § 2412(d)(1)(B). *Action on Smoking and Health v. Civil Aeronautics Board,* 724 F.2d 211 (D.C.Cir.1984); *McDonald v. Schweiker,* 726 F.2d 311 (7th Cir.1983); *McQuiston v. Marsh,* 707 F.2d 1082 (9th Cir.1983); *Walton v. Lehman,* 570 F.Supp. 490 (E.D.Pa.1983); *Berman v. Schweiker,* 531 F.Supp. 1149 (N.D.Ill.1982).

In the *Action on Smoking and Health* case, the court used the date of its (the Court of Appeals) final judgment as the beginning of the thirty day period. Since the application for fees had been filed forty-two days after the entry of that judgment, the court held that they were deprived of jurisdiction to award fees. *Action on Smoking and Health,* at 225.

In *McDonald,* a social security case, the plaintiff's motion for summary judgment was granted and judgment was entered on October 5, 1981. The government filed a notice of appeal on December 2, 1981, but on March 24, 1982, after the time for filing its appeal brief had expired, the government moved to dismiss the appeal and it was dismissed on March 30, 1982. On April 29, 1982, the plaintiff made a motion for attorneys fees. It was granted by the district court. The Court of Appeals reversed on the ground that the govern-

ment's position was substantially justified. On the question of the timeliness of the motion for attorney fees, the court allowed the fee application to be made after the completion of appellate proceedings. *McDonald,* at p. 315.

In *McQuiston,* the court held that the phrase "final judgment" should be defined by its common usage in context such as 28 U.S.C. § 1291, Fed.R.App.P. 4(a) and Fed. R.Civ.P. 54 and that a request for attorneys fees under 2412(d) is untimely if filed more than thirty days after the district court has entered judgment. *McQuiston,* at 1085.

In *Walton,* the court relied on the lower court decision in *McDonald*[2] and interpreted "within thirty days of final judgment" to mean within thirty days of the expiration of time to appeal or within thirty days of termination of the action in the court of last resort." *Walton,* at 495. It is unclear however, when, during the proceedings, the plaintiff filed his application.

In *Berman,* the court held that the date of entry of the summary judgment on the docket starts the period for notice of appeal and other post-judgment motions, including application for attorneys fees. *Berman,* at 1151–1152.

■ We agree with the *Berman* and *McQuiston* courts. For the purpose of certainty, we hold that the final judgment date should be considered the date when the judgment of the district court is docketed. In a case such as the one *sub judice,* the government has sixty days within which to file an appeal.[3] If the plaintiff does not file for fees after the district court judgment, but instead waits to see if the government will appeal, and the government chooses not to appeal, the plaintiff will be barred because more than thirty days will have elapsed from date of the final and only judgment in the case. Why should the result be any different in a case

---

1. *Action on Smoking and Health v. Civil Aeronautics Board,* 724 F.2d 211 at 225 (D.C.Cir. 1984) *Monark Boat Co. v. NLRB,* 708 F.2d 1322, 1327 (8th Cir.1983).

2. *McDonald v. Schweiker,* 551 F.Supp. 327 (N.D. Ind.1982).

3. Fed.R.App.P. 4(a)(1).

where the government does choose to appeal; or one in which an appeal is taken and then withdrawn; or one in which an appeal is taken and the judgment of the district court affirmed. If the thirty day period ran from any date other than the date of the district court judgment, the starting date would be different depending on future circumstances. An uncertain starting date for the thirty day period to run was never contemplated by Congress in passing the EAJA. We believe that a jurisdictional requirement that is of such importance to the prevailing party should not be subjected to the kind of uncertainty that will surely result from considering any date other than the date of the district court judgment.

However, even if the Court of Appeals decision was determinative as beginning the thirty day period, this plaintiff's application would be untimely. Filed on August 25, 1983, his application post-dated the Court of Appeals decision affirming the judgment by sixty-five days and its denial of the government's petition for rehearing by thirty-five days.

We are therefore without jurisdiction to award attorney's fees in this case.